| | | |
|---|---|---|
| CAROLINA RECORDING SYSTEMS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| CARY DAVID POSEY, and CRS, LLC, formerly known as Communication Recording Solutions, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss, filed by Defendants

Cary David Posey and CRS LLC ("CRS"), pursuant to FED. R. CIV. P. 12(b)(2) for lack of

personal jurisdiction, and alternatively pursuant to FED. R. CIV. P. 12(b)(3), for improper venue.

(Doc. No. 4). Defendants alternatively request that the Court transfer this action to the United

States District Court for the Northern District of West Virginia, pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND AND FACTS

Plaintiff Carolina Recording Systems, LLC is a limited liability company organized

under the laws of North Carolina, with its principal place of business in Charlotte, North

Carolina. (Doc. No. 4-1 at ¶ 6: Posey Aff., Ex. A). Plaintiff's owner is Steve Lomax. (Id. at ¶

4). Plaintiff is a distributor/wholesaler of communications equipment used in 911 emergency

service call centers. (Id. at ¶ 6). Defendant Posey is a West Virginia resident, and Defendant

CRS, LLC is a West Virginia limited liability company. See (Id. at ¶¶ 3, 7, 8, 10, 11; see also

Doc. No. 4-2: Ex. B). In 2012, Posey formed Communications Recording Solutions, LLC as a

West Virginia limited liability company. In 2017, Communications Recording Solutions, LLC

changed its name to CRS LLC.  Before the official change, Communications Recording

Solutions, LLC used the CRS name in the public domain.  CRS's business address is 612

Schrader Ave., Wheeling, West Virginia 26003.[1]  See (Doc. No. 4-1 at ¶¶ 7, 8, 10; Doc. No. 4-

2).  CRS sells and installs communications equipment used in 911 emergency service call centers

in West Virginia and Pennsylvania.  See (Doc. No. 4-1 at ¶ 9).

In 2011, on Plaintiff's behalf, Lomax reached out to Posey in West Virginia and asked

him to enter into a business relationship with Plaintiff, which would include the sale, installation,

and service of communication equipment used in 911 emergency service call centers in West

Virginia and Pennsylvania.  (Id. at ¶ 4).  Lomax reached out to Posey about the proposed

business relationship because of Posey's long-standing relationships with directors of 911

emergency service call centers in West Virginia.  (Id. at ¶ 5).

In 2012, Defendant CRS began selling and installing communications equipment

supplied by Plaintiff in 911 emergency service call centers in West Virginia and Pennsylvania.

(Id. at ¶ 12).  Plaintiff directly supplied the communications equipment that CRS installed for

CRS's customers in West Virginia and Pennsylvania.  (Id. at ¶ 13).  Plaintiff primarily invoiced

CRS's customers directly for all the communications equipment and post-sale services it

provided.  Infrequently, Plaintiff would send invoices to CRS for equipment sales in West

Virginia and/or Pennsylvania.  (Id. at ¶ 14).  Plaintiff's invoices were all on Plaintiff's letterhead

and were sent from North Carolina.  (Id. at ¶ 15).

From 2015 through 2018, Plaintiff and CRS operated on an informal agreement that

---

[1]  Relevant to the motion to dismiss for lack of personal jurisdiction, Defendants assert that neither Posey nor CRS owns any property in North Carolina, and CRS has never had any customers or other business dealings in North Carolina.  See (Id. at ¶¶ 24, 27-28).

governed the terms of their relationship. (Id. at ¶ 17). The informal agreement addressed the

profit split between Plaintiff and CRS for the sale and installation of communications equipment

and for any post-sale service agreements purchased by CRS customers. (Id. at ¶¶ 18-19). On

around February 1, 2014, Byron Burns purchased Plaintiff's assets, including its customer

accounts, customer lists, goodwill, intellectual property, and other tangible and intangible assets.

(Doc. No. 1 at ¶ 9). That same year, Posey met with Burns to discuss the terms of a contract that

was intended to formalize the agreed terms of the relationship between Plaintiff and CRS. (Doc.

No. 4-1 at ¶ 20). In 2015, Plaintiff sent a contract signed by Burns to CRS in West Virginia,

seeking to formalize the previously agreed upon terms of the relationship between Plaintiff and

CRS. (Id. at ¶ 21). Posey did not sign the agreement at that time.[2]

According to Plaintiff, beginning in late 2018, it became increasingly apparent that Posey

was violating the terms of the oral agreement with Plaintiff, and in December 2018 Burns sought

to end the parties' relationship. (Doc. No. 1 at ¶¶ 22-23). Burns proposed that Defendants pay

any outstanding amounts owed to Plaintiff, cease using Plaintiff's trademark, and wind up the

parties' relationship. (Id. at ¶ 23). Rather than negotiate the termination of the parties' business

relationship, Posey affixed his signature to the parties' four-year-old, long-lapsed contract. (Id.

at ¶ 24). Plaintiff also alleges that Posey unilaterally notified Plaintiff's customers to begin

remitting payment directly to Defendant CRS. According to Plaintiff, Posey deceptively

---

[2] Relevant to Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiff alleges, and Defendant Posey admits, that Posey attended meetings in North Carolina on behalf of CRS in on February 25, 2014, March 1, 2015, and January 18, 2017. (Doc. No. 4-1 at ¶ 7). According to Plaintiff, specifically on January 18, 2017, Posey met with Plaintiff and Burns to discuss the continuing business relations and potential process improvements between the parties. (Doc. No. 8-1 at ¶ 12: Burns Aff.).

informed Plaintiff's customers that the change in billing was merely a result of "changing our mailing address." (Id. at ¶ 26 & Ex. C).

Plaintiff filed this action on September 24, 2019, bringing the following claims against Defendants: (1) a claim for injunctive relief under the Defend Trade Secrets Act of 2016, based on Defendants' alleged misappropriation and threatened misappropriation of Plaintiff's trade secrets; (2) a claim for injunctive relief under the West Virginia Uniform Trade Secrets Act, based on Defendants' misappropriation and threatened misappropriation of Plaintiff's trade secrets; (3) a claim for common law unfair competition, based on Defendants' "use of the name 'CRS' and holding itself out as doing business in the Mid-Atlantic and Southeastern United States due to Carolina Recording's customers mistakenly believing that Recording Solutions is the same provider of the services as Carolina Recording"; (4) a claim for breach of contract, based on Plaintiff's allegations that Defendants breached the parties' oral agreement by offering the same installing maintenance services to Plaintiff's existing customers in West Virginia and Pennsylvania, failing to pay Plaintiff its share of the annual maintenance revenues for 2017 and 2018, failing to pay Plaintiff its share of gross profit from installing of a new system with Jefferson County Emergency Communications Center (in West Virginia), failing to inform Plaintiff of new contracts for annual maintenance with existing customers, and charging customers more for the installation of equipment than that quoted by Plaintiff; (5) a claim for tortious interference with existing contractual relations, based on Plaintiff's allegations that Defendants interfered with the contractual relationship between Plaintiff and its customers in West Virginia and Pennsylvania; (6) a claim for tortious interference with business relations and business expectations, based on Plaintiff's allegations that Defendants interfered with Plaintiff's business relationship with its customers in West Virginia and Pennsylvania; (7) a claim for

conversion; (8) a claim for unjust enrichment; (9) and a claim for trademark infringement under

15 U.S.C. § 1125(a), based on Plaintiff's allegations that Defendants' use of "CRS" and/or the

accompanying swooshing "C" logo violated Plaintiff's mark rights.

Defendants filed their motion to dismiss on November 22, 2019. Defendants argue that

the Court should dismiss this action for lack of personal jurisdiction under Rule 12(b)(2) of the

Federal Rules of Civil Procedure. Defendants also argue that venue is improper in this district

because all of the claims that Plaintiff raised in its Complaint are based on actions that allegedly

took place primarily in West Virginia (or Pennsylvania). Accordingly, Defendants also seek

dismissal under Rule 12(b)(3) based on improper venue. Finally, Defendants alternatively

request that the Court transfer this action, under 28 U.S.C. § 1404(a), to the United States

District Court for the Northern District of West Virginia. Plaintiff opposes the motion to dismiss

and filed a response brief on December 13, 2019. Defendants filed a Reply on December 30,

2019. Thus, this matter is ripe for jurisdiction.

## II.    DISCUSSION

Before addressing whether this Court may exercise personal jurisdiction over

Defendants, the Court will first consider the parties' arguments regarding venue. See Kimber v.

Plus3 IT Systems, LLC, No. ELH-18-3046, 2019 WL 1518970, at *4 (D. Md. Apr. 5, 2019)

(citing cases and concluding that a court may consider venue without first determining the

existence of personal jurisdiction). When a defendant objects to venue under Rule 12(b)(3) of

the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that venue is

proper. See Colonna's Shipyard, Inc. v. City of Key West, 735 F. Supp. 2d 414, 416 (E.D. Va.

2010) (citing Bartholomew v. Va. Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir. 1979),

overruled on other grounds by Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119 (1982)). In the

absence of an evidentiary hearing, to survive a Rule 12(b)(3) challenge, "the plaintiff need only make a prima facie showing of venue." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). In determining whether such a showing has been made, the Court must "view the facts in the light most favorable to the plaintiff." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012).

> Under 28 U.S.C. § 1391(b), a civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The Court agrees with Defendants that this forum is an improper venue. First, neither Defendant is a resident of North Carolina, let alone this judicial district. Moreover, Plaintiff has not shown that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Rather, all of Plaintiff's claims against Defendants arise out of Defendants' alleged conduct in West Virginia and Pennsylvania, not in North Carolina. That is, Defendants conducted their business in West Virginia and Pennsylvania, not North Carolina, and it was in those forums where they allegedly misappropriated trade secrets, breached the parties' contract, committed the alleged acts of conversions, etc. Indeed, Plaintiff specifically alleges that Defendants also violated the West Virginia trade secrets laws. Thus, contrary to Plaintiff's

assertions, the Court simply does not agree that a substantial part of the events giving rise to

Plaintiff's claims against Defendants occurred in this forum.

Alternatively, the Court finds that a transfer of venue is appropriate under 28 U.S.C. §

1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented." In

deciding the forum to which a case should be transferred, a district court first determines whether

the potential transferee forum is one in which the action could have been brought originally. The

court then considers the factors relevant to the specific case, including the convenience of the

parties and witnesses and the interests of justice generally. See Landers v. Dawson Constr.

Plant, Ltd., 201 F.3d 436 (Table), 1999 WL 991419, at *2 (4th Cir. 1999) (unpublished)

(citations omitted).

When considering a motion to transfer under § 1404(a), district courts should consider

the following discretionary factors: (1) the plaintiff's initial choice of forum; (2) relative ease of

access to sources of proof; (3) availability of compulsory process for attendance of unwilling

witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility

of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6)

relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy,

expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest

in having localized controversies settled at home; (10) appropriateness in having a trial of a

diversity case in a forum that is at home with the state law that must govern the action; and (11)

avoidance of unnecessary problems with conflicts of laws. Plant Genetic Sys. N.V. v. Ciba

Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996). Unless the balancing of these factors weighs

strongly in favor of the defendant, the plaintiff's choice of forum generally should not be disturbed. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984).

Here, transfer of this action is appropriate because the immediate action could have originally been brought in the United States District Court for the Northern District of West Virginia. Defendants reside in the Northern District of West Virginia. Furthermore, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in West Virginia, not in North Carolina. As noted, Plaintiff's owner Lomax reached out to Posey in West Virginia and asked him to enter into a business relationship with Plaintiff. See (Doc. No. 4-1 at ¶ 4). Posey, a resident of Wheeling, West Virginia, then created CRS, a West Virginia limited liability company, in response to Lomax's request. (Id. at ¶¶ 3, 7, 8, and 11; see also Doc. No. 4-2). The business relationship between Plaintiff and CRS revolved around CRS's sales and installation of communication equipment used in 911 emergency service call centers in West Virginia and Pennsylvania. See (Doc. No. 4-1 at ¶ 9). Thereafter, Plaintiff directly shipped communications equipment to CRS's customers in West Virginia and then directly invoiced those same customers for the communications equipment and post-sale services. (Id. at ¶¶ 13 and 14).

Furthermore, the balance of convenience weighs heavily in favor of transferring this matter to the Northern District of West Virginia. All of the witnesses in this action, other than Lomax and Burns, are located in West Virginia, or close by in Pennsylvania. This includes Posey, who is a Wheeling, West Virginia resident. See (Doc. No. 4-1 at ¶ 3). Moreover, all of the alleged conduct giving rise to Plaintiff's claims occurred in West Virginia and Pennsylvania. (Id. at ¶¶ 12, 24, and 26). In sum, the Court finds, alternatively, that this matter should be transferred this action to the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a).

## IV.     CONCLUSION

For the reasons stated herein, this matter is transferred to the United States District Court for the Northern District of West Virginia.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendants' Motion to dismiss, (Doc. No. 4), is **GRANTED** in part for the reasons stated in this Order, and this matter is transferred to the United States District Court for the Northern District of West Virginia.

(2) The Clerk is directed to terminate this action.

Signed: February 11, 2020

Max O. Cogburn Jr.
United States District Judge